UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OMAR OSVALDO MACHADO BLANCO,

*Petitioner*,

v. Case No. 3:26-cv-2017-JEP-LLL

WARDEN, NORTH FLORIDA DETENTION FACILITY, et al.,

*Respondents*.
_______________________________________/

# ORDER

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 on August 5, 2026. (*See generally* Doc. 1). Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1-1 at 4–5). He asks the Court to order his immediate release. (Doc. 1 at 8).

The Federal Respondents filed an amended response in opposition to the petition. (*See generally* Doc. 8). According to the Federal Respondents, "ICE has been actively seeking Petitioner's third-country removal to Mexico" but he has "impeded removal by refusing to cooperate." (*Id.* at 5). Petitioner filed a

reply arguing that the Federal Respondents "have produced no evidence that [third-country removal documents] have been issued[,] . . . Mexico has agreed to accept him[,] . . . [or any] concrete action [has been] taken toward removal." (Doc. 9 at 2). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.**

Petitioner, a citizen of Cuba, entered the United States on October 10, 2005. (Doc. 1 at 8; Doc. 8-1 at 7). An immigration judge ordered Petitioner removed on September 22, 2020. (Doc. 1 at 5). On December 28, 2020, ICE placed Petitioner on an order of supervision ("OSUP"). (Doc. 8-1 at 12). On January 30, 2026, ICE detained Petitioner. (Doc. 1 at 5). ICE subsequently revoked Petitioner's OSUP. (Doc. 8-2 at 2).

On August 21, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal:

> Petitioner's OSUP was revoked pursuant to 8 § C.F.R. 241.13(i) as he had violated the conditions of his release and there is a significant likelihood that he may be removed in the reasonably foreseeable future.
>
> . . .
>
> ICE intends to remove . . . [P]etitioner to Mexico pursuant to INA § 241(b)(2)(E).
>
> On April 2, 2026 Petitioner was transferred from Baker Correctional Institute to the Port Isabel Service Processing Center in Texas in preparation for removal to Mexico. On April 3,

> Petitioner was moved to the Florence Service Processing Center staging area in Arizona as the final stop before removal to Mexico. Petitioner refused to be removed to Mexico. Upon arrival, Petitioner had no third country removal documents. Petitioner was asked if he would comply with removal efforts to Mexico and he stated he would not. ERO then returned Petitioner to Baker C.I. by April 8.
>
> Petitioner was provided with notice of his file custody review on March 27, 2026. He was provided notice of DHS's decision to continue his detention on June 28, 2026 based on his recent aggravated felony conviction and was granted a personal interview on July 28, 2026.
>
> ICE ERO intends to remove . . . Petitioner to Mexico. . . . Petitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.
>
> . . . Petitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office.
>
> The receiving ERO field office will then notify Mexico's Instituto Nacional de Migracion (INM) of . . . [P]etitioner's upcoming removal to Mexico.
>
> Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.
>
> Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.
>
> Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.

(*Id.* at 2–4).

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of*

*removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

## III.

Here, Petitioner was taken into ICE custody on January 30, 2026, and he filed his petition on August 5, 2026—over six months after his re-detention. (*See* Doc. 1 at 5). Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "impeded removal by refusing to cooperate." (Doc. 8 at 5).[1]

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both

---

[1] Federal Respondents also assert that Petitioner's detention is lawful under 8 C.F.R. § 241.4(*l*). (Doc. 8 at 7–8). But 8 C.F.R. § 241.4 merely sets forth the criteria for revocation of an OSUP, *see* 8 C.F.R. § 241.4(*l*)(1), and does not affect Petitioner's *Zadvydas* claim, *see Phan v. Assistant Field Off. Dir. Miami Field Off.*, No. 3:26-cv-1705-MMH-PDB, 2026 WL 3022507, at *1–3 (M.D. Fla. Oct. 8, 2026).

> bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (unpublished but persuasive) ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) (unpublished but persuasive) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant

likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Here, the Federal Respondents have not shown that Petitioner's verbal expression of his intention not to cooperate with ICE's removal efforts was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or otherwise prevented removal. *See* 8 U.S.C. § 1231(a)(1)(C). Indeed, they do not even attempt to explain why Petitioner's verbal consent is necessary to effectuate his removal. (*See generally* Doc. 8). Simply put, the Federal Respondents fail to support their position.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2020, and he was released on an OSUP the same year. (Doc. 1 at 5; Doc. 8-1 at 12). He contends that he was re-detained on January 30, 2026, and "ICE has not shown Petitioner any Cuban travel document, Cuban acceptance, confirmed departure date, airline itinerary, or other evidence showing that his removal can presently be completed." (Doc. 1 at 5, 7). Petitioner has now been detained for over nine months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's]

showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

In his declaration, the deportation officer maintains that "ICE ERO intends to remove . . . Petitioner to Mexico." (Doc. 8-2 at 3). However, the declaration largely describes the general process for third-country removals to Mexico. (*See id.* at 3–4). Although the deportation officer says that Petitioner was one stop away from removal in April 2026, there is no specific timeline provided for any future removal attempt. (*See id.* at 3). Nor is there any indication that Mexico will provide "final acceptance" of Petitioner. (*Id.* ("Following INM's final acceptance . . . .")). Petitioner now has been in ICE custody for over nine months—more than three months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney

General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release").

Accordingly, it is **ORDERED**:

1. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[2] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.
2. The Warden's motion to dismiss (Doc. 6) is **DENIED** for the same reasons stated in *Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569, at *2–3 (M.D. Fla. Apr. 14, 2026).
3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

[2] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

**DONE AND ORDERED** in Jacksonville, Florida on November 13, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Omar Osvaldo Machado Blanco
Counsel of Record